And now we'll hear the case of Hidalgo v. Ichiro Sushi, and we received a letter that there's no appearance on behalf of Mr. Hidalgo. So, Mr. Yan, you're up. Go ahead. Thank you, Mr. Troy. Thank you, sir. 1783, I just want to point out that's the... No, that argument is over. Let's go to the next one. Okay. You don't get to take no extra time. Especially when she's already walking out the door. All right. All right, go ahead. May I please record, good morning, Your Honor. My name is David Yan, 100%. Defendant, apparent, new Ichiro Sushi, Inc. This case is about whether or not the plaintiff present document evidence to meet his burden of proof that he... I saw that argument in your brief, Mr. Yan. I don't understand. There is no rule that you have to have corroboration documents. If someone testified to something, including the hours that they worked, even if they don't have documents to support it, it could be credited. There's no rule that says you have to have documents, right? There's a... Actually, Your Honor, I respectfully point to a case. There's a six-court case in 2018. Gamiro versus Purdue Sushi Corporation, citing Anderson versus Monk Clements Pottery Company, the case, saying that the plaintiff, in part, he bears the burden of proving he performed a work for which he was insufficiently compensated. And... Right, but that... District judge found that he did bear the burden and he bore it successfully. Because this case, that's the... We have a plaintiff come in saying that, oh, I worked for this employer, worked for this restaurant, worked for this employer. However, he could not really produce any time cards. He could not... Oh, I know you've said that. You've said that. But it's been pointed out to you by the presiding judge that testimony is sufficient, I believe. Yeah. Your Honor... There's no requirement that for an employee to recover in an FLSA case, they have to have kept time records of when they worked. Obviously, that would be helpful. It would strengthen their case. And indeed, it's often the case that there are no time records because the employer doesn't keep them, which in and of itself is a violation of the... on the New York side of the labor law as well, to some degree, the federal law, for which there are separate penalties that are imposed. Isn't that the case? Your Honor, that's their... Right, so, I mean, so it's in the employer's... It's to the employer's benefit to not keep a time record. If the law were as you stated it, it would be in the employer's favor to not keep a time record because then no one could prove their claim. Because this case was joint trial with other plaintiff. Well, I understand that, but... Other plaintiff come in saying that they had the punch cards. These are the punch card machine. But they are separate cases. And was there any contradictory evidence that your cards or otherwise contradicted Mr. Hidalgo? Contradictory evidence is that the district court improperly excluded the apparent defendant's evidence. The version was closed down from September 17, 2014 to the end of... Wait a second. The district court said as long as you put in proof that you're producing discovery, that it would be admitted. It was admitted conditionally and you put that letter in. So there was no exclusion of that evidence. No, no. Eventually, there was... My question to you on that is I looked at those bank records. I can't make heads or tails out of them. How can you possibly tell from those bank records that the restaurant was closed for two weeks for renovation? It's just endless lines from a bank that make no sense to me. So can you explain that to me? Your Honor, nowadays, the restaurant cannot really open... I mean, operate by their own. They have to sign in with the online apps, like the seamless group... group phone, whatever. These apps, you have to use your bank account, bank whatever, because without the apps, not each individual restaurant could really operate profitably. These apps, you have to use the corporation name and the bank accounts, because the apps, they're charging money, and why to your bank account? So the bank account, actually, and also point of sale, showing substantially this evidence whether or not the restaurant is in the operative status or it was closed. Okay, but if you really wanted the district court to consider that and understand that, I went back and looked at the testimony. There was a lot of argument about the records, but the explanation that you just tried to give this court was never given to the district court. So what the district court had was pages and pages of bank records that on their own, to me, made no sense. There was a testimony of Chi-Heng Wang in the building. He said that the bank record reflect that the restaurant was not open. I know, but I'm telling you, it was not explained. He did say that. He said, yeah, we were closed and we have bank records, and then it was a whole discussion about whether they should be admitted or not, but nobody explained how the bank record showed that, and it was not clear to me. So I don't know how it would have been clear to the district court. Due to the trial, there was time assigned to the defendant and the parent, and there was about almost six or seven minutes to argue whether or not this record should be admitted. The district court saying that if you insist to admit this record, I'm going to sanction you. I said, why should I sanction you? Why should I be sanctioned? Because this was produced during the discoveries. After several or eight minutes, the district court said, okay, let's suppose this one, you submitted the letter. At first, he— So what, you're saying you ran out of time? That you didn't have time to explain them? Is that what you're saying? No, we ran out of time. Did you ask for more time? Your Honor, we need to explain these records so you can have a few minutes. There was none of that, right? Okay. When the district court told me that the defense counsel said, okay, you can't—you search your record to find out if you ever produced during the discovery, then I will admit these records. Then, he said, your time is over. You can't—so everything was over. So it was not really because there's a certain time allowed to plaintiff, certain time for the defendant. During the defendant's trial time, there was a lot of discussion about whether or not these should be admitted or these evidence should be excluded. And the plaintiff counsel saying that the defendant never produced these records. The judge said, oh, you never produced— You're mixing arguments now. That's a separate argument from whether or not they show it was under renovation or not. Now you're saying that the district court somehow abused her discretion in not giving you additional time that you didn't even ask for. So that's a whole separate issue that isn't really properly raised. I know, but, you know, that's a way of the trial, the district court. They gave you—okay, you have one hour, 15 minutes. You can try. At the end, judge, you can't get more minutes. He said—she said, no, you can't. That's the—we have only this time for trial, result of the trial. You used up all your time. Even I do believe the transfer. I said, judge, there was discussion about whether or not this record should be admitted. Judge, that's part of it. You already used all your minutes, nothing more. So that's— All right. Before you waste all your minutes here on that, you have two and a half hours. You want to cover something else. But, Your Honor, I do believe because the Montgomery's case really saying that if the employer come forward saying that, no, you have to produce the record because you only have a long testimony saying that I work for the employer. I work for 72 hours a week. That means the person worked about 12 hours a week for 72— at least more than 10 hours a week for seven days a week. However, this person present evidence to the whatever federal government agency saying that she worked part-time. She was a part-time employee, less than 30 hours a week. And now she also come to—he also come to federal court saying that, no, that's not right. My past document evidence submitted to the federal agency for whatever, Medicaid, for food stamp, is not correct. Now I work 72 hours a week and underpaid. And he can—the plan cannot double dip for both benefits. That's in the evidence. So, Your Honor, I think it's somewhat ironic that in connection with the other appeal, you're arguing that the district court's credibility determinations, we should defer to those, notwithstanding those documents, punch cards. But here, because there was one plaintiff who she found credible, we should disregard all that deference is essentially what you're telling us. Isn't that somewhat ironic? Your Honor, if you may understand, that's a different— What happened in this case is, this person come in, the plaintiff came to the federal court, asked for relief without any evidence. No punch cards. He never filled out the form of the employee's— while other employees filled out— We saw—I've seen many of these cases. That's—this is—this may be the worst one in the last 18 months. The employees never have documents. It's always on their testimony as to what is and weren't. But Your Honor— I mean, the simple fact of the matter is that the vast majority of these wage cases, there aren't any records because it's in the employer's benefit to not have a record. So, the rule can't be that the claim has to be premised on a document. That just can't—that can't be the rule this way. Your Honor, can you imagine if somebody walked into a restaurant, I had that case, oh, I was here to purchase, but because the door that was on the ramp, I could not come in. But that's a—you have to show that you actually come to this restaurant. For an opposite—for this case here, in person, how come I never— you work for a part in court. Did you call any of the employees that say he never worked there? You could have called the employees that said he never— he was never the sushi chef at the new restaurant. There was no employee who testified to that, right? Did you call the contractor who allegedly was working while the restaurant was being reworked? No. Okay. This employee said that he was my boss. He did not—this plaintiff said that he was a sushi chef. All right, Mr. Yan, I think we've gone over time here. We understand the argument. So, thank you for coming in today. We're going to reserve the decision. Have a good day. Okay. All right, the remaining two cases on the calendar today are on submission. Horty, Americas LLC versus Jacobs Village Farm et al. And Stegaman versus Diaz et al. I believe that completes the business of the court today. And with thanks to Ms. Rodriguez, I'll ask you to adjourn the court. Course then is adjourned. Rhea, are you going to connect me to the roving room or should I proceed by phone? Judge, they will call you from the roving room in a few minutes. Is that okay? Can you hear me? Judge, can you hear me? Yeah, am I going to proceed by phone? Yes. Okay, and they have my number. Can I give it to you? Yes, I do have both of your numbers here, your cell phone and your chambers. Which one you want them to use? I think the chambers would be fine. Okay, Judge. Thank you, they will call you in a few minutes. Is that 2181? 2181. Yeah, that's fine. All right, thank you. All right. Bye. Bye. All right. Bye. Bye.  Bye. Bye.  Bye. Bye.  Bye. Bye.  Bye.  Bye.